[S. F. No. 11204. In Bank.—June 6, 1927.]

## LOUISE DE HAVEN, Respondent, v. JOHN A. SMITH, Appellant.

[1] AGENCY—ACTION TO RECOVER MONEY AND PROPERTY—FINDING—SUFFICIENCY OF EVIDENCE.—In this action to recover money and property alleged to have been delivered by plaintiff to defendant, as the confidential agent and trustee of plaintiff, it is held that the record abundantly supports the conclusion that defendant undertook to hold the property for the use and benefit of the plaintiff and expend it according to her directions.

[2] JUDGMENTS—ALTERNATIVE JUDGMENT—VALUE OF PROPERTY—EVIDENCE.—In such an action, in which the judgment was in the alternative awarding the value of the property to plaintiff in the event it could not be returned to her, judgment for the par value of bonds in question was proper, where the defendant offered no evidence to show that the market value was less than the face value of the bonds, and it was also proper to award judgment in a certain amount as the value of an automobile in question, where this amount was less than the price defendant testified the machine cost and less than the amount he could resell it for.

---

(1) 39 Cyc., p. 85, n. 74.    (2) 23 C. J., p. 57, n. 39 New; 39 Cyc., p. 477, n. 89 New.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Cabaniss, Judge. Affirmed.

The facts are stated in the opinion of the court.

Harry H. Baier and Albert Jacoby for Appellant.

Myrick & Deering & Scott for Respondent.

LANGDON, J.—Plaintiff alleged that on or about December 1, 1920, at Reno, Nevada, she and defendant entered into an agreement whereby defendant was to become the confidential agent of and trustee for plaintiff in all of plaintiff's financial affairs, and that, thereafter, certain money and property were delivered by plaintiff to defendant in his fiduciary capacity; that on December 13, 1920, plaintiff delivered to the defendant, as her agent and trustee, the sum of $13,951, with instructions to buy an automobile to cost not more than $5,000 and to use the balance for the use and benefit of plaintiff; that defendant purchased an automobile for $4,620 and held the balance in trust for plaintiff; that, thereafter, and from time to time, during the years 1920 and 1921, plaintiff delivered to defendant, as her said agent, sums of money aggregating in excess of $10,000 and that defendant has refused to account for any of said sums, although a demand for such accounting has been made by plaintiff.

It is further alleged that in the year 1921 plaintiff delivered to defendant two pearl earrings of the market value of $2,000 for the purpose of having them examined and valued by a jeweler and for no other purpose and that defendant retained said jewelry and refuses to deliver it to plaintiff; that in the same year plaintiff delivered to defendant as her said agent and trustee eighteen bonds for the par value of $1,000 each, upon his representation that he would invest the proceeds thereof so as to increase the capital one hundred per cent and that defendant still retains the said bonds or the proceeds thereof; that in February, 1921, plaintiff delivered to defendant as her said agent and trustee $4,000, with which to purchase a second automobile for plaintiff; that defendant purchased said automo-

bile with said funds and now holds the same or the proceeds thereof as trustee for plaintiff. The prayer was for an accounting and judgment for money and property found due plaintiff by defendant.

Defendant answered denying the allegations of the complaint as to the confidential relationship of the parties and alleging that the property mentioned in the complaint was delivered to him from time to time as gifts from plaintiff to defendant.

The trial court found that the property was delivered to defendant, as the confidential agent and trustee of the plaintiff, and found the amounts and value thereof to be as alleged in the complaint, except that the pearl earrings are found to have been of the value of $200. The bonds are found to be of the value of $18,000 and the automobile to be of the value of $1,500, and judgment was given for the return of these three items of property or their value as found by the court. As to the money, aggregating over $20,000, entrusted to defendant by plaintiff, no judgment was given, because an accounting thereof was waived by plaintiff. The record discloses that these sums were used, in part at least, for the living expenses of plaintiff and defendant during the period of their association upon their travels over the country.

From this judgment defendant appeals, contending that the record fails to disclose a fiduciary relationship between the parties; that there is no evidence of the value of the property retained by defendant and, therefore, a judgment in the alternative for its return or for its value is error; that the record discloses that part of the funds with which the second automobile was purchased belonged to defendant, having been received by him as insurance upon the first automobile purchased by him with the funds of plaintiff, which first automobile he contends was a gift to him from plaintiff.

Plaintiff and defendant met at Reno, Nevada. Plaintiff was securing a divorce; defendant conducted a taxicab business. Plaintiff had two daughters in Germany. She secured a divorce from her husband and was in receipt of an income from him. She was also one of the heirs to considerable property in Chicago, from which she was receiving an income of over $1,000 a month. Plaintiff met defendant

when she engaged his "cabs" for use during her stay in Reno. He asked her to "help him out" with money and she gave him $500. She paid for the use of his "cabs" during the six months she was in Reno. When plaintiff was ready to leave there, she spoke of coming to California in an automobile and defendant proposed that she should take one of his cars with a chauffeur for three months, for which she was to pay $1,000 a month. There was then discussed a scheme by which the defendant was to try to secure for himself an inheritance. It appears that plaintiff was one of the beneficiaries of a trust in an estate referred to in the record as the "Bigelow Estate," and under the provisions of the trust her share was to vest in her surviving children, upon her death. Although defendant was about thirty years of age, the parties discussed a plan by which he would become the adopted son of plaintiff, provided the parties were advised by counsel that an adopted child would meet the requirements of the trust. With this idea in mind, the suggested arrangement about renting defendant's automobile with a chauffeur at $1,000 a month was "turned entirely aside," according to the testimony of plaintiff, and we may pause to remark that we are taking her testimony as true wherever a conflict is found in the record. Defendant was taken to California, "almost as an adopted son." Plaintiff gave defendant a draft for more than $13,000 and out of the proceeds thereof he was to buy an automobile for her and use the rest for their travels. After that plaintiff handed defendant her income checks as they were received and he placed them in the bank. At first the account was in the defendant's name and, later, it was placed in a joint account of plaintiff and defendant. In Los Angeles, California, the automobile was wrecked and from the insurance money received for this loss by defendant, and with additional money furnished by plaintiff, the automobile involved in the present action was purchased. While traveling about with plaintiff, defendant suggested that the bonds she had were not proper investments; that they had been sold to plaintiff because the seller wanted to get rid of them and that plaintiff should sell them or she would suffer a loss. The bonds were United States Liberty bonds, United States Steel Corporation bonds and railroad bonds. Plaintiff testified: "He (defendant) told me Mr. Howe must have

given me these old bonds—that he wanted to get rid of them, and that he told me he was going to double the bonds for me if I would give them to him. He told me that in Reno there was absolutely no garage—no heated garage—and he showed me black on white that if he only had fifty cars in there he would get me an income of one thousand to fifteen hundred dollars a month, and that he would put his brother in there to keep the books and he needed two men only, but that the eighteen thousand dollars that I had bonds would not be enough, so he would be able to get the rest and the first thing he would be able to pay that off and we would go to Europe and not depend on the National Trust Company.'' Plaintiff continued: ''He took me down to the bank—I don't know the name of the bank—and he asked he got me to sign these papers and to have the bonds come to Los Angeles. We were in Santa Barbara and were leaving for Los Angeles. Q. And where did the bonds come? A. The bonds came to Los Angeles, and when I had them in my hand, I said, 'I want the document, because the capital is mine,' and he answered me, 'Of course, you shall have the document,' and he turned around and said, 'Have you no confidence in me?' And I said, 'Yes, I have confidence, because, you know, I want to adopt you, and I believe that you would not hurt me.' I did not want to give him the bonds until I got the document. Q. Did you at any time give him the bonds? A. I gave him the bonds under the condition that he would give me once the document, and he said he would. Q. Did he ever do that? A. He has never given me a document and has just gone off with them.''

Plaintiff testified that, later, when she asked for these bonds so that she could borrow money upon them to pay federal taxes defendant claimed they belonged to him.

[1] It is unnecessary to go into further detail regarding the record. The defendant traveled about with the plaintiff, gathering unto himself as he went, her income checks, her capital, her automobile, and even her furs and jewelry. During all this time he was managing everything for her, attending to her business and her traveling arrangements and planning for her future. The record abundantly supports the conclusion that he undertook to hold this property for her use and benefit, and expend it according to

her directions. He spent large sums of money on himself, and even when he was away from plaintiff demanded $400 a month for his personal living expenses. He succeeded in using up all plaintiff's income, for which no recovery is had in the judgment appealed from. He now seeks to retain her bonds, automobile, and jewelry upon his testimony and that of members of his family that they were gifts to him.

[2] As to the judgment in the alternative, awarding the value of the property to plaintiff in the event it could not be returned to her, the court gave judgment for the par value of the bonds, which was some evidence of their value and defendant offered no testimony to show that the market value was less than the face value. As to the automobile, the defendant testified that it had cost $5,385. He told plaintiff that he could resell it for about $2,000 and the court has allowed plaintiff $1,500 as its value.

There is no prejudicial error in the record and if plaintiff collects the amount of this judgment from the defendant partial justice only will have been done her. The judgment is affirmed.

Preston, J., Curtis, J., Seawell, J., Richards, J., Shenk, J., and Waste, C. J., concurred.